IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

| | | |
|---|---|---|
| STEPHEN MCCARTHY | : | |
|     *Appellant* | : | No. 24-2704 |
| v. | : | |
| | : | |
| DRUG ENFORCEMENT ADMINISTRATION | : | |

## RESPONSE TO ORDER TO SHOW CAUSE DATED JULY 21, 2025

Daniel A. Pallen, Esquire, counsel for the Petitioner, respectfully submits this Response pursuant to the Court's July 21, 2025, Order to Show Cause regarding his conduct in connection with briefing in this appeal.

**I.    FACTUAL BACKGROUND.**

1.    This Court entered an Opinion and Judgment adverse to the Petitioner, Stephen McCarthy on July 21, 2025. (ECF Docs. 52-53).

2.    At the same time, this Court also entered an Order to Show Cause directed to undersigned counsel to show why he should not be sanctioned for conduct with respect to briefing in this case specifically with regard to lack of candor to the Court. (ECF Doc. 51).

3.    Prior to the action which ended this appeal, on May 15, 2025, a Text Order was entered at the direction of the Court which Ordered that the Petitioner:

> …provide the Court with copies of the eight adjudications cited and summarized on pages 32-35 of Petitioner's Opening Brief. Many of the citations and summaries appear to be inaccurate in multiple respects. Petitioner is

also directed to explain whether and how he verified the accuracy of the summaries. Petitioner must submit copies of these decisions and his explanation of whether and how he verified the summaries on or before May 22, 2025.

(ECF Doc. 44).

4. Attorney Pallen timely complied with the Text Order and filed his response on May 19, 2025. (ECF Doc. 45).

5. Attorney Pallen incorporates his response to the Text Order (ECF Doc. 45) as if set forth herein more fully at length.

6. Attorney Pallen now responds timely to the Order dated July 21, 2025. (ECF Doc. 51).

## II. ARGUMENT/RESPONSE.

7. At the outset, undersigned counsel recognizes he is subject to discipline under those rules set forth in this Court's Order to Show Cause dated July 21, 2025:

   (a). Third Circuit Rules of Attorney Disciplinary Enforcement 2.1(e);
   (b). Third Circuit Rules of Attorney Disciplinary Enforcement 2.1(d);
   (c). Pa. R. Prod. Conduct 3.3;
   (d) Third Circuit Rules of Attorney Disciplinary Enforcement 2.1(c);

8. Counsel readily concedes that the aforementioned Rules governing conduct and enforcement are applicable under the circumstances before the Court.

9. As represented in the Response to the Order to Show Cause, it was in mid-February 2025, that your undersigned came to believe with reasonable certainty that the citations and case descriptions made in the Opening Brief, as supplied by

the client, were likely supplied by Artificial Intelligence ("AI"). (ECF Doc. 45 at ¶ 17-18).

10. Even still, undersigned counsel did not submit a corrective filing to address the inaccurate authority.

A. **DUTY OF CANDOR – RECOGNITION AND REMEDIATION**

(1). **REPRESENTATION MADE IN OPENING BRIEF AND REPLY BRIEF.**

In undersigned counsel's Reply Brief it was represented that he was making a good faith effort to chronicle Agency disparities. (ECF Doc. 33). This Reply Brief was filed on February 06, 2025.

As stated in the Response to the Text Order, Attorney Pallen did receive content from his client which was generated so rapidly that it caused your undersigned to directly question the client about his use of AI. (ECF Doc. 45 at ¶ 16-17). It was not until a few days later in mid-February 2025, that your undersigned conclusively deduced that the citations and case descriptions made in the Opening Brief, as supplied by the client, were likely supplied by Artificial Intelligence ("AI"). (ECF Doc. 45 at ¶ 17-18). It is also true that from mid-February until this Court's prompting by way of Text Order dated May 15, 2025, that Attorney Pallen did nothing to remediate the problem or to retract the supplied citations and descriptions.

Pennsylvania Rule of Professional Conduct 3.3 provides that "[a] lawyer shall not knowingly . . . make a false statement of material fact or law to a tribunal or fail

to correct a false statement of material fact or law previously made to the tribunal by the lawyer." Pa. R. Prof'l Conduct 3.3(a)(1); <u>Martinez v. Delbalso</u>, No. 19-5606, 2021 U.S. Dist. LEXIS 26178 (E.D. Pa. Feb. 11, 2021); <u>Artesian Water Co. v. Chester Water Auth.</u>, No. 10-7453, 2014 U.S. Dist. LEXIS 137930, 2014 WL 4851498, at *21 (E.D. Pa. Sept. 30, 2014) (stating that counsel's failure to inform the court of his prior misstatement that plaintiff had not received certain documents from defendants that plaintiff had, in fact, already received, "may very well have violated" Rule 3.3).

Undersigned counsel, having a career of seventeen (17) years has deep respect for the duty of candor, and even deeper regrets for falling short in this instance. The only nuance here is whether or not counsel knowingly advanced inaccurate and unverified citations. Between the time of the Opening Brief and the Reply Brief, undersigned counsel included citations that had not been properly verified and were later determined to be inaccurate. Your undersigned failed to cross-reference, research deeply, fully read, or even Shepardize™ the authority presented to the panel. After it became clear that the authority shared with him by the client and submitted in the brief was AI generated, counsel failed to retract the citations which were presented without sufficient verification. However, when prompted by this Court, your undersigned readily and immediately took ownership and responsibility of the matter. See e.g. (ECF Doc. 45 at ¶ 25-26) (failing to make a reasonable inquiry under the circumstances admitted by Attorney Pallen).

Attorney Pallen failed to verify and independently confirm legal authorities that were later discovered to be inaccurate or fictitious due to lack of oversight, diligence, and professionalism. Once it became clear that the citations were fictitious and/or materially inaccurate, Attorney Pallen made no effort to correct the false statement(s) until prompted by this Court.

Counsel understands that attorneys practicing before this Court have a nondelegable responsibility to ensure that all representations—factual and legal— are accurate, sourced, and made with integrity. In this instance, Attorney Pallen failed to verify certain citations that were included in a draft prepared by his client.

Candor means more than just not lying. It also means not saying things "that are literally true but actually misleading." In re Taylor, 655 F.3d 274, 283 (3d Cir. 2011). And it means steering clear of "half-truths, inconsistencies, mischaracterizations, exaggerations, omissions, evasions, and failures to correct known misimpressions created by [the lawyers'] own conduct." Wharton v. Superintendent Graterford SCI Phila. Dist. Attorney's Office, 95 F.4th 140 (3d Cir. 2024) quoting Six v. Generations Fed. Credit Union, 891 F.3d 508, 511 (4th Cir. 2018).

While Counsel did not knowingly or intentionally present false authority, the authority was presented negligently which created the risk of misleading the Court. Counsel takes that risk seriously and deeply regrets the lapse in oversight. Counsel especially regrets his failure to file a retraction once he reasonably suspected the

inaccuracy. Undersigned counsel recognizes the Court's justified concerns and fully accepts the consequences that will follow from failing to meet this standard.

### (2). MINIMIZATION OF THE INNACURATE SUMMARIES.

Again, undersigned counsel does not contend otherwise - the authority supplied was not vetted, read or researched. Yet, undersigned counsel represented to the Court that the inaccurate summaries were either "immaterial misstatements" or "tangential details" in the Reply Brief. (ECF Doc. 33).

Counsel now recognizes that his prior characterization of those summaries as immaterial or tangential was misguided. While the constitutional issues were the focus of the appeal, counsel acknowledges that any misstatement—regardless of its weight in the broader argument—warrants forthright correction.

The Appellee's Brief roundly dispensed with the Federal Register citations *ad seriatim* which had been supplied in the Opening Brief. *See e.g.* (ECF Doc. 27). The Appellee's advocacy, however, does not change that fact that the problematic authority was not properly researched and was described in language that, in retrospect, understated its deficiencies.

The only explanation that Counsel has for minimization is: the constitutional issues in the case were the prime mover on appeal for the Court's consideration. The arbitrary and capricious standard arguments made were the least persuasive aspect

of the appeal. If the Court were to have granted relief on the basis of the constitutional issues, the third argument would never have been reached.

### (3).  FAILURE TO CORRECT MISSTATEMENTS.

The standard set forth in Fusari v. Steinberg, requires that counsel advise the court of developments that may conceivably affect the outcome of a case. 419 U.S. 379, 95 S. Ct. 533, 42 L.Ed.2d 521 (1975). "Some Courts seem to have narrowed the duty of candor to require an element of materiality. Those courts have invoked the duty when counsel has failed to inform the court (or belatedly informed the court) of a development that could have a material effect on the outcome of the litigation. Martinez v. Delbalso, No. 19-5606, 2021 U.S. Dist. LEXIS 26178 (E.D. Pa. Feb. 11, 2021).

As this Court is aware, counsel did not correct the misstatements prior to May 15, 2025, when there was an opportunity to have done so. Even if DEA Counsel dispensed fully with the mis-cites in Appellee Brief, this was not sufficient reason alone to avoid a retraction. Counsel regrets that this opportunity for retraction came and went; but points to the Court that, at no point after May 15, 2025, did Counsel ever continue to "press on" or suggest that the authority was genuine. *C.f.* Mata v. Avianca, Inc., 678 F. Supp. 3d 443 (S.D.N.Y. 2023) (individual attorneys were sanctioned $5,000 each as per Fed. R. Civ. P. 11(b)(2) where they submitted non-existent judicial opinions with fake quotes and citations created by an artificial

intelligence tool, **then continued to stand by the fake opinions after judicial orders called their existence into question**). In contrast, undersigned counsel did not persist in reliance on the problematic authority once its accuracy was questioned by the Court, and has fully cooperated at every stage of this proceeding.

B.  <u>**FAILURE TO SELF DISCLOSE PRIOR TO MAY 15, 2025**</u>.

Counsel did not correct the misstatements prior to May 15, 2025, when there was an opportunity to have done so. Counsel filed a Reply Brief on February 06, 2025, where he minimized the mis-cites and still had failed even then to properly vet and research the material provided to the Court.

Shortly after the Reply Brief was filed, counsel questioned the client about the content's origin and grew increasingly concerned that AI may have been involved. Although the client maintained that the citations were real, counsel's independent search—including one clearly nonexistent case—deepened his concerns. In hindsight, counsel recognizes that a prompt corrective filing should have been made regardless of that uncertainty.

Attorney Pallen had an opportunity from mid-February to mid-May, 2025 to issue a correction or retraction but did neither. Counsel acknowledges that DEA's Brief highlighted the deficiencies, but this was not a substitute for an affirmative retraction. The Appellee Brief made clear that the authority provided was inaccurate. During that span of time, counsel looked for the one case that did not exist.

Meanwhile his client assured him it was an existent case. After that fruitless search and before May 15, 2025, it should have been apparent to undersigned counsel that a written retraction was necessary.

C. **REMEDIAL MEASURES AND ASSURANCE TO THE COURT.**

Undersigned counsel has taken this experience as a sobering professional inflection point. This experience has been professionally humbling and has prompted immediate and lasting reforms to Counsel's practice.

Changes have been required to eliminate the possibility of a future scenario where counsel simply accepts draft material as valid. Accordingly, Counsel has now implemented strict protocols requiring full-source validation of every case citation used in any filing, regardless of origin. Every single written submission to this Court or any other will be cross-checked for citations on Lexis-Nexis (counsel's in-house research platform). Any client-prepared, draft material will now be confined to factual chronology or personal narrative only subject to a signed client verification. This means that all legal assertions will be independently sourced and confirmed. Counsel humbly assures the Court that this lapse—while serious and regrettable—will not be repeated here or in any other court or jurisdiction where undersigned practices.

Counsel respectfully requests that the Court consider his prompt response, candor in responding, and remedial actions in determining whether sanctions are

necessary. If so, Counsel requests that they may be limited in scope to reaffirm the importance of diligence without impairing his ongoing ability to serve clients and the public.

Counsel is deeply grateful for the Court's attention to this matter and remains committed to honoring the ethical and professional standards required of all attorneys who appear before it. Counsel remains committed to ensuring that this Court and all others can place full confidence in the accuracy and integrity of every filing submitted under his name.

**D.     APPLICATION REQUESTING TO APPEAR IN PERSON.**

The Order to Show Cause dated July 21, 2025 (ECF Doc. 51) permits undersigned counsel to file an application requesting to appear before the panel in person. Counsel desires to appear in person and will file the appropriate application by way of separate filing and docket entry.

Respectfully submitted,

**THE LAW OFFICES OF<br>
DANIEL A. PALLEN, P.L.L.C.**

_____<br>
Daniel A. Pallen, Esquire<br>
PA Attorney ID: 207001<br>
114 West Front Street<br>
Media, PA 19063<br>
(484) 550-7542<br>
(484) 550-7532 *fax*